**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| RABO AGRIFINANCE, INC., a Delaware Corporation, as successor in interest to RABO AGSERVICES, INC., | § § § § | |
| Plaintiff | § § | CIVIL ACTION NO. 2:05-cv-00314 |
| v. | § § | |
| TERRA XXI, LTD., ROBERT WAYNE VEIGEL, ELLA MARIE WILLIAMS VEIGEL, VEIGEL FARMS, INC., and VEIGEL CATTLE COMPANY | § § § § § | |
| Defendants | | |

**MEMORANDUM OPINION**

Rabo Agrifinance, Inc. brought this diversity suit to collect the unpaid balance on two promissory notes executed by the Defendants. The Court grants Rabo Agrifinance's motion summary judgment.

I. BACKGROUND

Farm Credit Bank of Texas made the Defendants two loans in 1994. Loan J452124 was for $1,962,100, and loan 090400 was for $1,037,900. The Defendants executed a promissory note in each amount, agreeing to pay loan J452124 in twenty-one annual installments and loan 090400 in eleven annual installments. Farm Credit Bank secured the notes by taking liens on land that the Defendant Terra XXI owned in Deaf Smith County, Texas, in Guadalupe County, New Mexico, and in Quay County, New Mexico. Farm Credit Bank assigned the notes and liens to First Ag Credit in February 2000, after which the Defendants defaulted on both loans. In a letter dated August 15, 2000, First Ag Credit told the Defendants that it would accelerate the

loans on September 4, 2000 and begin collection proceedings unless the Defendants cured their default:

> In the event that on or before 10:00 a.m., Lubbock, Texas local time, on September 4, 2000, the above-demanded sum is not paid to First Ag Credit, FCS . . . then the entire unpaid principal balance of the Indebtedness, together with the accrued and earned but unpaid interest owing thereon, will be accelerated and will be fully due and payable.  In addition, if the Indebtedness is accelerated as set forth above, First Ag Credit, FCS will institute collection proceedings under its loan documents . . . .

Three days before that date of acceleration, Terra XXI filed for Chapter Eleven bankruptcy.  First Ag Credit filed a claim in the bankruptcy, saying that Terra XXI owed money under the promissory notes.  The bankruptcy plan allowed the claim and provided the terms under which Terra XXI was to pay the $2,956,268.95 owed to First Ag Credit.  The plan also preserved First Ag Credit's liens on Terra XXI's property as senior liens and gave First Ag Credit the power to exercise state-law remedies if Terra XXI defaulted on the payment obligation.

After Terra XXI emerged from bankruptcy, the Defendants failed to make all scheduled payments.  First Ag Credit accelerated the amounts due on the notes on June 20, 2003, and it assigned the notes and liens to Rabo AgServices, Inc. in February 2004.  Now known as Rabo Agrifinance, Rabo AgServices sent the Defendants a notice of default on September 21, 2005.  It later filed this suit to collect the accelerated amount.

Also involved in this suit are loans made by AgServices of America, Inc. to the Defendants in the late '90s.  The Defendants executed promissory notes that were payable to Ag Services of America in the amounts of those loans.  Although the land in Deaf Smith County was already subject to Farm Credit Bank's senior lien, the indebtedness to AgServices of America was secured by deeds of trust to the same land.  The Defendants executed these deeds for the

benefit of Ag Acceptance Corporation, which is related to Ag Services of America and is Rabo Agrifinance's wholly owned subsidiary. The Defendants defaulted on their obligations, and a foreclosure sale of the land in Deaf Smith County was held. At the sale, Ag Acceptance Corporation bought the land for $20,000. The Defendants allege that Ag Acceptance Corporation bought the land for this "discount price" because of Farm Credit Bank's senior lien that First Ag Credit had acquired. The land remains subject to the lien, which First Ag Credit assigned to Rabo Agrifinance. Rabo Agrifinance has also acquired the promissory notes that were originally payable to Ag Services of America.

## II. DISCUSSION

Rabo Agrifinance, referred to as the Plaintiff for the rest of this Memorandum Opinion, has moved for summary judgment in this suit to establish the Defendants' liability on the promissory notes (loan numbers J452124 and 090400) and to recover the principal, interest, costs, and fees due.

### A. SUMMARY-JUDGMENT STANDARDS

"Suits to enforce promissory notes are especially appropriate for disposition by summary judgment." *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 276 (5th Cir. 1991). A court may grant summary judgment if the record shows that the case has no genuine issue of material fact and that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment has the burden to identify the parts of the pleadings and discovery on file that, together with any affidavits, show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has carried this burden, the burden shifts to the nonmovant to show that the court should not grant summary judgment. *Id.* at 324-25. The Court must review the facts and draw all inferences

most favorable to the nonmovant. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). And the nonmovant, rather than rest on mere allegations or denials in its pleadings, must set forth specific facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## B. LIABILITY

The Plaintiff may receive summary judgment on liability by proving (1) that the Defendants signed the notes; (2) that the Plaintiff owns the notes; and (3) that the notes are in default. *U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Plaintiff proved the Defendants signed the promissory notes by producing copies of the signed notes. The Defendants admitted in their answer that the notes are authentic and that the loans were made. The Plaintiff proved it owns the notes by producing a copy of Farm Credit Bank's assignment of the notes and liens to First Ag Credit and by producing a copy of First Ag Credit's like assignment to the Plaintiff. The Defendants have neither questioned these documents nor produced evidence to dispute ownership. The Plaintiff proved the notes are in default with evidence of the Defendants' admission that they failed "to make all scheduled payments" on the notes and by producing the notice of default that it sent the Defendants. The Defendants have done nothing to raise a genuine issue about default. As a result, the Plaintiff has carried its burden to prove the case has no genuine issue about the Defendants' liability on the notes.

The Defendants have nonetheless raised four affirmative defenses to liability: (1) the statute of limitations; (2) the merger doctrine and double recovery; (3) the alleged refusal of the Plaintiff's predecessor in interest, First Ag Credit, to accept the Defendants' offer to pay the notes in full; and (4) First Ag Credit's failure to redocument the notes as allegedly required by Terra XXI's bankruptcy plan.

*1. The Statute of Limitations*

Texas law puts a four-year limitations period on a claim to collect a debt. Tex. Civ. Prac. Rem. Code Ann. § 16.004(a)(3) (Vernon 2006). If a promissory note contains an acceleration clause, then the lender's claim accrues when he exercises the right to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). Acceleration, a question of fact, requires two "unequivocal" acts: notice of intent to accelerate and notice of acceleration. *Id*.

The Defendants say that First Ag Credit sent a notice of default, a notice of intent to accelerate, and a notice of acceleration on August 15, 2000. The Plaintiff sued on the notes on December 9, 2004, more than four years after this alleged acceleration. The Defendants argue that therefore the statute of limitations bars the Plaintiff from collecting the amount due on the notes. Defendants, however, misinterpret the letters sent on August 15, 2000. Those letters reflect nothing more than First Ag Credit's intent to accelerate. First Ag Credit said in one letter that it planned to accelerate the notes on September 4th "in the event that" the Defendants failed to cure their default. It also said that it planned to institute collection proceedings "if the Indebtedness" was accelerated. An unequivocal notice of acceleration would not have included such conditional language.

In fact, First Ag Credit did not accelerate the promissory notes until June 20, 2003, after Terra XXI's bankruptcy. The Plaintiff sued to collect the debt within four years of that date. The Court therefore rejects the statute-of-limitations defense.

*2. The Merger Doctrine and Double Recovery*[1]

The merger doctrine provides that, when someone acquires title to land, his prior liens or interests in the land merge with the title and terminate. *State v. Moak*, 207 S.W.2d 894, 896 (Tex. 1948); *see also West v. Seigler*, 265 S.W.2d 618, 620 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.) (saying that Texas law disfavors merger). The doctrine applies if (1) there is a greater and lesser estate; (2) the estates have united in the same owner; (3) the estates are owned in the same right; (4) there is no intervening estate; (5) merger is not contrary to the intent of the person who owns both estates; and (6) merger will not disadvantage the person who owns both estates. *Flag-Redfern Oil Co. v. Humble Exploration Co., Inc.*, 744 S.W.2d 6, 9 (Tex. 1987). A court may ignore the fifth and sixth elements when necessary to prevent fraud or an "unconscientious wrong." *First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 612-13 (Tex. App.—Corpus Christi 1993, writ denied).

Defendants argue that, because Ag Acceptance Corporation bought the land in Deaf Smith County, their liability for the notes terminated when First Ag Credit assigned the notes and lien on the land to the Plaintiff. The Court disagrees. Although the Plaintiff owns Ag Acceptance Corporation, a parent and a wholly owned subsidiary are separate legal entities with separate assets. *Capital Parks, Inc. v. Se. Adver. & Sales Sys. Inc.*, 30 F.3d 627, 629 (5th Cir. 1994). Thus, Ag Acceptance Corporation's title to the land in Deaf Smith County and the Plaintiff's senior lien on the land are not "united in the same owner." And the Defendants have not offered evidence of whether the Plaintiff intended for the estates to merge, whether merger

---

[1] The Defendants pleaded the merger doctrine as defense. They did not reference this defense by name in their response to the Plaintiff's Motion for Summary Judgment; they instead mixed the defense with the additional defense that a judgment for the Plaintiff will amount to double recovery. As such, the Court will address the two defenses separately.

will disadvantage the Plaintiff, or whether this Court may ignore these elements. The Court therefore rejects the merger-doctrine defense.

The Defendants also argue that letting the Plaintiff recover the full debt secured by that lien after Ag Acceptance Corporation used the existence of First Ag Credit's senior lien to justify a "discount" purchase price will amount to double recovery. This argument has no merit. Double recovery of a loan means that a creditor has recovered the same loan twice. *See El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex. 1993) ("The one satisfaction rule provides that a party which suffers but one injury can recover only one satisfaction for damages arising from that injury."); *First Heights Bank, FSB*, 852 S.W.2d at 605-06. The loans from Ag Services of America and from Farm Credit Bank and are not the same loans—they are different. The efforts of Ag Acceptance Corporation to recover the amount due on Ag Services of America's loans do not prevent the Plaintiff from recovering that due on Farm Credit Bank's loans.

*3. The Alleged Offer to Pay the Notes in Full*

Tender means the unconditional offer by a debtor or obligor to pay the amount due on a specific obligation. *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963). The obligor must offer to pay the debt, produce the funds, and relinquish them for a sufficient time and under such circumstances as to let the creditor take possession without special effort. *Id.* If the creditor refuses tender, the obligor has no liability for interest after the due date on the amount tendered. Tex. Bus. & Comm. Code Ann. § 3.603(c) (Vernon 2006). Yet a refusal does not extinguish the debtor's liability for the principal outstanding debt. *Guaranty Bank v. Thompson*, 632 S.W.2d 338, 340 (Tex. 1982).

The Defendants argue that their debt was extinguished when First Ag Credit refused their offer to pay the full amount due on the notes. Steve Veigel is Terra XXI's authorized management agent and the corporate secretary for Veigel Cattle Incorporated and Veigel Cattle Company. He stated in an affidavit that the "Defendants arranged for other financing to pay off First Ag Credit in full on August 4, 2003." He also stated that "First Ag Credit refused to accept such payment indicating that it had already made a deal with Plaintiff." These actions do not amount to tender. They do not say whether the Defendants made an unconditional offer to pay or whether they actually produced the funds. Thus, the liability of the Defendants, whether for interest or principal, was not extinguished.

*4. The Alleged Failure to Redocument*

The Defendants argue that Terra XXI's second modified bankruptcy plan extinguished the notes when First Ag Credit failed to redocument them as required by article 8.07 of the plan.[2] Article 8.07 provides that "[h]olders of claims allowed as secured claims under this Plan shall provide for the re-documentation of all claims and security interests where applicable under the terms and provisions of the Plan." The Defendants interpreted this paragraph as having required each holder of an allowed secured claim to redocument. This interpretation makes the language "where applicable under the terms and provisions of the Plan" redundant or meaningless. Properly interpreted, this paragraph required a holder to redocument only if provided as such in the terms and provisions that are specific to that holder. *See Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000) ("[A] contract

---

[2] According to the Defendants, "the note and lien of First Ag Credit were modified and replaced by the confirmed bankruptcy plans of Defendants, Terra XXI, Ltd. and Veigel Farm Partners." (Defs.' Br. in Supp. of Defs.' Resp. to Pl.'s Mot. for Summ. J.). Veigel Farm Partners, an obligor on the promissory notes, is not a defendant here. Thus, the Court will not address whether its bankruptcy plan affected the notes—which were not addressed in the plan—or whether Veigel Farm Partners remains liable on the notes.

should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous."). In Terra XXI's bankruptcy plan, article 3.04 contains the terms and provisions that are specific to First Ag Credit. These terms and provisions say nothing about redocumentation. The notes, as a result, were not extinguished.

Even if the plan did require First Ag Credit to redocument, the court would reach the same result. A confirmed bankruptcy plan does not affect a guarantor's liability for the bankrupt's promissory notes. *See In re Applewood Chair Co.*, 203 F.3d 914, 918 (5th Cir. 2000) (citing 11 U.S.C. § 524(e) (1994)). This means that a confirmed plan does not extinguish the notes, regardless of whether the creditor failed to redocument, when there are guarantors. Yet a confirmed plan does affect the rights that a bankrupt and creditor have under the notes. 11 U.S.C. § 1141(a) (2006). The plan functions as a contract that binds the two parties. *In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002). Neither party may assert rights that are inconsistent with the plan's provisions. *In re Varat Enter., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938)).

Because a confirmed plan does not affect a guarantor's liability, Terra XXI's plan does not affect the liability of the Defendants Robert Wayne Veigel, Ella Marie Williams Veigel, Veigel Farms, Inc., and Veigel Cattle Company. As for Terra XXI's liability, the confirmed plan gave First Ag Credit the right to exercise state-law remedies if Terra XXI failed to pay the $2,956,268.95 as the plan required. As First Ag Credit's successor in interest, the Plaintiff may exercise the same state-law remedies against Terra XXI that First Ag Credit could have exercised. The Defendants have not offered evidence showing why this suit is inconsistent with those remedies.

C.  AMOUNT OF LIABILITY

The Plaintiff produced the affidavit of John Roth, the Plaintiff's controller, to establish the principal and interest due on the notes. Roth says in the affidavit that, "[a]s of June 30, 2006, the amount due, with accrued interest, was $3,800,677.98." Attached to the affidavit is a spreadsheet that shows Roth's calculations. With this evidence, the Plaintiff carried its burden to prove the amount that the Defendants owe on the notes.

The Defendants argued that this suit has a factual question about the principal and interest owed because First Ag Credit gave them contradictory pay-off information. They support this argument with letters from First Ag Credit and with spreadsheets titled "Farm Credit Bank of Texas Loan Payment History." These documents do not show contradictory pay-off information,[3] nor do they refute that the amount due on the notes totaled $3,800,677.98 as of June 30, 2006. As such, the Defendants failed to raise a genuine issue about the principal and interest due on the notes.

IV. CONCLUSION

The Court grants summary judgment to the Plaintiff on the issue of liability and on the issue of the principal and interest due on the notes. Judgment will accordingly be entered for $3,800,677.98, plus interest that has accrued on the notes since June 30, 2006, plus interest and costs on the judgment, plus attorney's fees. The Plaintiff shall immediately submit its proposed

---

[3] One letter provides that the pay-off amounts on December 18, 2003 were $1,397,395.68 for Loan Number 452124 and $500,090.77 for Loan Number 90400. These amounts do not contradict anything in the spreadsheets (which show the history of the principal due on the notes) because the spreadsheets cover a period up to only November 7, 2003. Another letter provides that the outstanding principal on November 4, 2002 was $1,985,520.33 for Loan Number 452124 and $758,546.89 for Loan Number 90400. The spreadsheets show the same thing. The letter also provides that the balance on June 20, 2003 was $2,085,943.28 for Loan Number 452124 and $796,977.04 for Loan Number 90400. Again, the spreadsheets show the same thing.

calculation of this additional interest and of attorney's fees. The Defendants shall respond immediately if it disagrees with the Plaintiff's calculations.

Signed this  4th  day of October, 2006.

                                            /s/ Mary Lou Robinson
                                            **MARY LOU ROBINSON**
                                            **UNITED STATES DISTRICT JUDGE**